BRUCE LANE, Plaintiff-Appellant, v. THE CITY OF HARVEY, Defendant-Appellee.

First District (1st Division)   No. 88—0328

Opinion filed December 27, 1988.

Roy C. Dripps, of Talbert & Mallon, P.C., of Alton, for appellant.

Elizabeth A. Brown and Colleen H. Considine, both of Judge & Knight, Ltd., of Park Ridge, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order granting summary judgment in favor of defendant, the City of Harvey (City), pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005).

On appeal, the plaintiff's principal contention is that the City was not entitled to summary judgment as a matter of law as material questions of fact existed as to the City's duty to train him as a traffic controller. For the reasons set forth below, we affirm.

Plaintiff, Bruce Lane, was employed as a plant security guard by Diamond Detective Agency. One of his duties was to direct traffic outside the Arco Plant in Harvey, Illinois. On September 30, 1982, while directing traffic outside of the plant, he was injured when he was struck by a motorist, Agnes Crawford. Following his injury, plaintiff filed suit against Arco, Atlantic Richfield Company, M.R.W. Investments and the City of Harvey. Only the City is a party to this appeal.

According to deposition testimony, since 1972 traffic control at the Arco plant in Harvey had been predominately provided first by the Graham Detective Agency, and later by the Diamond Detective

Agency. Between 1975 and 1978, the City of Harvey also intermittently had provided traffic control through its police department if sufficient officers were available. Deputy Police Chief Stanley Morris testified that the City had trained private traffic controllers when requested to do so; however, neither Lane, the Diamond Detective Agency nor Arco had requested the City to train Lane or assist him with traffic control. Sgt. Levon of the Harvey police department testified to the effect that he had watched Lane directing traffic numerous times and Lane may have been doing so in an unsafe manner.

The City filed motions to strike and dismiss count IV of plaintiff's complaint twice, both of which were granted. Plaintiff then moved to amend the complaint a third time, alleging that the City was negligent in failing to provide traffic control at peak hours, in failing to install a mechanical system to regulate traffic, in failing to provide plaintiff with proper protective equipment and training and failing to integrate plaintiff into the City's traffic control system. The City moved for summary judgment, which was granted. The trial court's order stated in relevant part:

"1. That the City of Harvey's motion for summary judgment is granted;

2. That the City of Harvey is dismissed from this action with prejudice ***."

We first address plaintiff's contention that the trial court erred in granting defendant's motion for summary judgment. The basis for this contention is that although the motion was before the court as a motion for summary judgment, plaintiff claims that the court analyzed and ruled on the motion as though it were a motion to dismiss. Plaintiff alleges that as a result of the trial court's improperly confusing a determination of factual sufficiency with a determination of legal sufficiency, he was prejudiced in that he responded to the motion for summary judgment by submitting deposition testimony in support of his position rather than seeking to amend his complaint.

■■ While the trial court's order refers to a "dismissal with prejudice," the record supports the conclusion that the court believed a legally sufficient cause of action had been stated and that it properly ruled on defendant's motion for summary judgment. Moreover, a reviewing court may affirm a correct judgment even if the trial court's reasoning is incorrect. (See, *e.g.*, *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1062, 467 N.E.2d 1153; *Miller v. Board of Education* (1983), 119 Ill. App. 3d 88, 93, 456 N.E.2d 143.) Since the court reached the correct conclusion here, we will affirm its decision irrespective of the reference to "dismissal with prejudice."

Plaintiff's reliance on *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, and *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360, is misplaced. In *Janes*, the Illinois Supreme Court criticized the once common practice of combining a motion to dismiss with a motion for summary judgment and held that a trial court should entertain a motion for summary judgment only after a legally sufficient cause of action has been stated. (*Janes*, 57 Ill. 2d at 405-06.) In *Premier*, the trial court was criticized for granting a defendant's motion to strike and dismiss and then, at defendant's request, changing the ruling to one for summary judgment. (*Premier*, 115 Ill. App. 3d at 642.) The reason for the court's criticism of the practices that occurred in *Janes* and *Premier* was that the parties opposing the motions in both cases were clearly prejudiced by the court's conduct.

The defendant here did not engage in either of the practices criticized in *Janes* or *Premier*. Here, the City filed two motions to dismiss plaintiff's count IV against the City, both of which were granted. Plaintiff was then allowed to amend his complaint a third time. It was only after plaintiff had filed his third amended complaint that the City moved for summary judgment on the basis that there was no genuine issue of material fact.

██ █ Section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) provides that summary judgment is appropriate "if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 586, 272 N.E.2d 497, *cert. denied* (1971), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Thus, summary judgment is proper when the issue is determinable as a matter of law. (*Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 1004, 365 N.E.2d 80, *appeal denied* (1977), 66 Ill. 2d 629.) In an action for negligence, the plaintiff cannot recover unless the defendant has breached a duty owed to the plaintiff, and whether such a duty exists is a question of law to be determined by the trial court. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 544-45, 301 N.E.2d 307.) In the absence of any material facts from which the court could infer the existence of a duty, no recovery is possible as a matter of law, and summary judgment in favor of the defendant would be proper. Although the plaintiff was not required to prove his case at this point in the proceedings, he was required to present some kind of factual basis

which would arguably entitle him to judgment under the law governing negligence. (See, *e.g., Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80, *appeal denied* (1977), 66 Ill. 2d 629.) Plaintiff, therefore, had to affirmatively show that the City either had a legal duty to train him as a traffic controller or that a duty arose out of the "special duty" doctrine.

While the plaintiff recognizes that the City initially had no legal duty to train him as a traffic controller, he contends that by gratuitously undertaking to train and equip other traffic controllers, the City assumed a duty to him. Plaintiff relys principally on *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769, in support of this argument. The plaintiffs in *Nelson* brought suit to recover for personal injuries and wrongful deaths against an insurance company which had negligently performed gratuitous safety inspections of certain hoist equipment which later gave way. The court found that by voluntarily undertaking the safety inspections, the defendant had incurred an enforceable duty to the plaintiffs to make its inspections with due care. The court held only that having assumed the duty, the company was required to carry out the inspections in a skilled and nonnegligent manner. It did not hold that because the insurance company had performed voluntary inspections in the past it was obligated to continue to do so in the future. The *Nelson* court also noted that the charge against the company was misfeasance rather than nonfeasance and that the injured workers had relied on the insurance company's inspection of the hoist, although it did not find that reliance was essential to a finding of liability.

The holding in *Nelson* is consistent with the general rule that once a city undertakes a duty to provide certain services or facilities it may be liable for failure to do so with due care (see, *e.g., Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 108-09, 382 N.E.2d 1205), but it does not support the conclusion that because a city once trained an independent traffic controller at the request of his employer it has an ongoing duty to seek out and train all independent security guards who may on occasion direct traffic in the course of their employment. Here, unlike in *Nelson*, there was no misfeasance; the City did not undertake a duty to provide traffic control and then perform it negligently. Nor is there any evidence to the effect that plaintiff relied on the defendant City in any respect, which was a factor in the court's finding of liability in *Nelson*.

The situation here is more nearly analogous to that in *Cwik v. Forest Preserve District* (1985), 131 Ill. App. 3d 1097, 477 N.E.2d 21, *appeal denied* (1985), 106 Ill. 2d 553. The plaintiffs in *Cwik* brought

suit against the forest preserve district for injuries incurred while snowmobiling in a park operated by defendant. The plaintiffs alleged that defendant had voluntarily assumed a duty to mark certain pillars and cable which presented a danger to snowmobile users as it had done so in the past. The court in *Cwik* rejected that argument and held that "[o]ne who has gratuitously assumed to protect others against injury is under no obligation to continue that protection indefinitely. (*Cwik*, 131 Ill. App. 3d at 1099; see also *Chisolm v. Stephens* (1977), 47 Ill. App. 3d 999, 365 N.E.2d 80, *appeal denied* (1977), 66 Ill. 2d 629.) As in *Cwik*, the instant case involves nonfeasance, an omission or failure to perform some act rather than misfeasance or negligent performance. Even assuming the City had provided traffic control outside of the Arco plant in the past and had voluntarily undertaken to train private traffic controllers at their request, plaintiff has alleged no facts sufficient to establish that the City has assumed a voluntary duty to train the plaintiff here.

■■ ■ Even if we had found that the City had a duty to train the plaintiff, the facts alleged fail to show that any action by the City was a proximate cause of plaintiff's injuries. While the question of proximate cause is ordinarily one of fact for the jury, this rule is subject to the limitation that if on all the evidence reasonable men could come to only one conclusion, the question of proximate cause is to be decided as a matter of law. (*Vest v. City of Granite City* (1982), 106 Ill. App. 3d 36, 39, 435 N.E.2d 755, *appeal denied* (1982), 91 Ill. 2d 581.) Under Illinois law, a distinction is made between the proximate cause of an injury and a condition which provides an opportunity for the causal agency to act. (See, *e.g.*, *Storen v. City of Chicago* (1940), 373 Ill. 530, 533-34, 27 N.E.2d 53.) Where a negligent act or omission does nothing more than furnish a condition which makes an injury possible, but the injury is caused by the subsequent independent act of a third person, the two acts are not concurrent and the condition is not the proximate cause of the injury. (*Storen*, 373 Ill. 530, 533-34.) Here the injury was caused by the independent act of a third person, not by the failure of the defendant city to train the plaintiff as a traffic controller.

■ The plaintiff also contends that the trial court erred in finding that his complaint had failed to sufficiently allege the "special duty" exception to immunity for public employees. The "special duty" doctrine is an exception to the general rule that a municipality is ordinarily not liable for failure to provide adequate police protection or services. (See, *e.g.*, *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214.) Under the special duty doctrine, a city may be liable for

injuries to an individual where a public employee has assumed a special duty to the person which elevates his status to something more than a member of the general public. (*Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1065, 467 N.E.2d 1153.) The "special duty" exception applies where: (1) the municipality is uniquely aware of the particular danger or risk to which the plaintiff is exposed; (2) there are allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions are either affirmative or willful in nature; and (4) the injury occurred while the plaintiff was under the direct and immediate control of employees or agents of the municipality. *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 176, 446 N.E.2d 1183, *appeal denied* (1983), 96 Ill. 2d 541.

The plaintiff contends that these requirements were satisfied as follows: (1) Sgt. Levon testified that he had watched plaintiff directing traffic and he may have been doing it unsafely; (2) the City failed to provide him with proper equipment and training; (3) the city knowingly allowed him to engage in traffic control without training or equipping him; and (4) Deputy Police Chief Morris testified that all traffic controllers were under the control of the police department. After reviewing the record, we are not persuaded that the facts alleged support an inference that the City was under a special duty to protect plaintiff by training him in traffic control.

■ With respect to the first requirement, the trial court pointed out that there was no evidence to suggest that the municipality was uniquely aware of any particular danger to which the plaintiff was exposed in that traffic control is conducted on a daily basis by numerous private citizens. We agree. The deposition testimony of Sgt. Levon, upon which plaintiff relies, does not suggest otherwise. Sgt. Levon's testimony included the following exchange:

"Q. And during the 40 or 50 times [you watched him direct traffic], did you ever see—Do you have any opinion as to how he was doing his job?

\* \* \*

Q. Would you make any suggestions as to things he could improve on, or were [*sic*] doing things which you considered unsafe?

A. Probably.

Q. Okay, and what would that be?

A. I wouldn't know exactly specifically."

This general acquiescence to a statement suggesting that plaintiff may have been doing things that were unsafe does not support an allegation that the City of Harvey was aware that plaintiff was being

exposed to a unique danger. With respect to the second and third elements of the special duty doctrine, the plaintiff has alleged no affirmative or willful acts or omissions on the part of the City. None of the plaintiff's allegations is an allegation of wrongdoing, and he has cited no authority to the effect that the City had a duty to equip or train private security guards involved in traffic control. The plaintiff also has failed to satisfy the fourth prong of the test in that his injury did not occur while he was under the direct and immediate control of the employees or agents of the City (*cf. Gardner v. Village of Chicago Ridge* (1966), 71 Ill. App. 2d 373, 219 N.E.2d 147, *appeal denied* (1966), 34 Ill. 2d 629.) Even assuming that Sgt. Levon may have believed the plaintiff needed training, for the purpose of the special duty exception to the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 4—102), a public employee's actual notice of another's need for protection is not determinative of a finding of direct and immediate control. The determinative factor is whether the public official was responsible for the occurrence which gave rise to the need for protection. (See, *e.g., Jackson v. Chicago Firefighters Union, Local No. 2* (1987), 160 Ill. App. 3d 975, 513 N.E.2d 1002; *Galuszynski v. City of Chicago* (1985), 131 Ill. App. 3d 505, 475 N.E.2d 960 *appeal denied* (1985), 106 Ill. 2d 554.) Clearly the City was not responsible for the circumstances that caused the injury to plaintiff, nor was a police officer in the vicinity when the injury occurred. Accordingly, we agree with the trial court's conclusion that plaintiff failed to allege sufficiently the special duty exception.

For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.